IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DANNY M. MICHEL, | ) | 4:10CV3258 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Danny M. Michel, brings this suit challenging the Social Security Commissioner's final administrative decision denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434,1381-1383f.[1]  For the reasons discussed below, the Commissioner's decision will be affirmed.

## I.  Background

Plaintiff's applications for DIB and SSI were denied initially November 29, 2004, with the Commissioner finding that Plaintiff's complaints of "back problems, a hernia, and depression" would not preclude him from performing "simpler, lighter types of work found in the national economy with limited climbing, balancing, stooping, kneeling, crouching, or crawling" (Tr. 75).[2] The applications were also

---

[1] Sections 205(g) and 1631(c)(3) of the Act, 42 U.S.C. §§ 405(g), 1383(c)(3), provide for judicial review of the Commissioner's final administrative decisions under Titles II and XVI.

[2] The administrative record, or transcript ("Tr."), consisting of 786 pages, was filed by the Commissioner in paper form.

denied on reconsideration on February 8, 2005, with the Commissioner adding that "[b]ecause of [Plaintiff's] back problems, especially, [he] would have difficulties with jobs that require heavy lifting or a lot of bending" (Tr. 80) and that "[b]ecause of depression [he] would have difficulties with some social situations, such as working with the general public" (Tr. 80). While acknowledging that these restrictions "would make it difficult for [Plaintiff] to do the kinds of work [he] has done in the past" (Tr. 80), the Commissioner concluded that he "should still be able to do less physically demanding work" (Tr. 80).

On April 7, 2005, Plaintiff filed a request for an administrative hearing, stating that he was "in too much pain to work full time" (Tr. 69). The hearing did not occur until almost 2 years later, on March 23, 2007 (Tr. 61). The administrative law judge ("ALJ"), James Francis Gillet, issued a unfavorable decision on November 5, 2007, finding, among other things, that Plaintiff (1) "has not engaged in substantial gainful activity since April 1, 2004, the alleged onset date" (Tr. 42); (2) "has the following severe impairments:[3] [d]egenerative disk disease from L1 through L5 and L5-S1, with stenosis and bilateral radiculopathy, status post laminectomy at L4-5 in 1992; obesity; depression secondary to medical conditions; personality disorder, not otherwise specified; and alcohol dependence" (Tr. 42); (3) "has the residual functional capacity to perform sedentary work, at best"[4] (Tr. 44); and (4) "is unable to perform any past

_____

[3] A medically determinable impairment is "severe" if it significantly limits an individual's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521, 416.921.

[4] After noting that "[s]edentary work requires lifting or carrying 10 pounds or less; sitting for 6 hours in an 8-hour workday; and standing or walking 2 hours in an 8-hour workday" (Tr. 44), the ALJ found that Plaintiff has the following additional limitations:

> The claimant requires the ability to shift and change positions while sitting; he can remain on task at these times. He requires a 5-minute break after sitting for 30 minutes; he can remain on task during these times. He cannot repetitively push or pull with either the upper or

-2-

relevant work . . . as an office helper, carpet layer, delivery truck driver, security guard, concrete laborer, stock clerk (produce or grocery clerk), warehouse worker, building maintenance repairer, and general foundry worker" (Tr. 49-50). Mr. Gillet determined that Plaintiff is not disabled, however, because "there are jobs that exist in significant numbers in the national economy that [he] can perform" (Tr. 50), including "information clerk" (Tr. 51).

On January 9, 2008, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Social Security Administration (Tr. 33). On August 4, 2008, the Appeals Council granted Plaintiff's request, vacated the ALJ's decision, and remanded the case because of two basic errors (Tr 30-32).

First, the Appeals Council found that Mr. Gillet had not properly evaluated the evidence of record regarding Plaintiff's physical and mental status, and, in particular, had failed to evaluate the opinions of acceptable medical sources, including a treating physician, Jane McDonald, M.D., and state agency consulting physicians. It stated:

> The Administrative Law Judge found that the claimant retains the residual functional capacity to perform a range of sedentary work

---

> lower extremities. He cannot crawl. He is limited to occasional stooping, squatting, kneeling, and climbing. He can frequently bend, twist, and turn. He cannot use air or vibrating tools, operate motor vehicles, or work at unprotected heights.
>
> The claimant's ability to interact with the public and co-workers is moderately limited. His ability to appropriately respond to work pressures at the unskilled an semi-skilled level is slightly limited. The claimant's ability to understand and remember instructions is moderately to markedly limited at the semi-skilled level and moderately limited at the unskilled level. His ability to deal with short, simple instructions is moderately limited at the semi-skilled level, with no limitation at the unskilled level.

(Tr. 44)

(Decision, p. 5 and Finding #5). The hearing decision, however, does not contain a proper evaluation of the evidence of record. The hearing decision summarized the evidence of record, and rejected properly the assessment of the claimant's counselor on the claimant's mental status. However, the hearing decision did not articulate the claimant's physical and mental status to the evidence of record, and did not evaluate the various assessments of the acceptable medical sources of record.

For example, the claim file contains an assessment on the claimant's physical status, from Jane McDonald, M.D., that the Administrative Law Judge mentioned, but did not evaluate, in establishing the claimant's physical functional limitations (Exhibit 38F). Likewise, the medical source opinions from the State Agency in the claim file at Exhibits 2F; 4F; 5F and 7F were not mentioned and were not evaluated, as required by Social Security Ruling 96-6p.[5]

(Tr. 30) The ALJ was directed on remand to "[g]ive further consideration to the claimant's maximum residual functional capacity and provide rationale with specific references to the evidence of record in support of the assessed limitations (Social Security Ruling 96-8p). In so doing, the Administrative Law Judge will evaluate all of the opinion evidence of record on the claimant's physical and mental status, rationalize all findings to the evidence of record and properly determine the claimant's functional limitations on a function-by-function basis." (Tr. 31)

_____

[5] "Because State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs, the rules in 20 CFR 404.1527(f) and 416.927(f) require administrative law judges and the Appeals Council to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

Second, the Appeals Council found that Mr. Gillet had not made a proper assessment of Plaintiff's mental residual functional capacity ("RFC"). It stated:

> The Administrative Law Judge found that the claimant has a severe mental impairment which causes moderate limitations in social functioning, as it pertains to interacting with the public and with co-workers; however, there were no specific work-related limitations in the established residual functional capacity, as it pertains to the claimant's limitations in social functioning (for example, a person with moderate limitations in social functioning may be limited to jobs with little contact with the public). Further, the Administrative Law Judge described the claimant's mental ability to function in terms of moderately to markedly limited, instead of specific terms as to the claimant's remaining mental capacities. A further evaluation is required.

(Tr. 30-31) The ALJ was directed on remand to "[f]urther evaluate the claimant's mental impairment(s) in accordance with the special technique described in 20 CFR 404.1520a and 41 6.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1 520a and 416.920a." (Tr. 31)[6]

On February 23, 2009, a hearing was held before a different ALJ, Christopher Larsen (Tr. 23-27). Plaintiff appeared with counsel and testified (Tr. 761-79). A vocational expert, Judith Najarian, also provided testimony and, subsequent to the hearing, responded to written interrogatories propounded by the ALJ (Tr. 779-86, 708-16). Based largely on Plaintiff's recent employment history, which included working at a truck stop 6 hours per day, 4 days per week, Mr. Larsen found in a decision issued

---

[6] The Appeals Council additionally directed the ALJ, "[a]s required, [to] obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83-12 and 83-14)." (Tr. 31)

on October 6, 2009, that Plaintiff is not under a "disability" as defined in the Social Security Act (Tr. 12-22).[7]

Evaluating Plaintiff's claim using the 5-step sequential analysis prescribed by Social Security regulations,[8] Mr. Larsen made the following findings:

1. Mr. Michel meets the insured status requirements of the Social Security Act through June 30, 2009.

2. Mr. Michel has not engaged in substantial gainful activity since April 1, 2004, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).[9]

---

[7] Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

[8] "At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the [residual functional capacity ('RFC')] to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform." *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006) (footnote omitted).

[9] "Substantial gainful activity is defined as work activity which is both substantial and gainful. Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation. To determine if the work a person is doing is considered substantial and gainful, factors such as the amount of compensation and whether the work is done in a special or sheltered environment are considered. The claimant is presumed to be engaged in substantial gainful activity if his or her earnings from that activity exceed

3. Mr. Michel has the following severe impairments: obesity, lumbar degenerative disc disease, depression secondary to general medical condition, and personality disorder (20 CFR 404.1520(c) and 416.920(c)).

4. Mr. Michel does not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After carefully considering the entire record, I find Mr. Michel has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk 2 hours, and sit 6 hours, in an 8-hour workday; and perform simple, repetitive tasks. He must be allowed to sit or stand at will throughout the day (20 CFR 404.1567(a) and 416.967(a)).

6. Mr. Michel cannot perform any past relevant work (20 CFR 404.1565 and 416.965).

7. Mr. Michel . . . was 42 years old, and therefore a "younger individual age 18-44" under Social Security regulations, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. Mr. Michel has a limited education and can communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because the framework of the Medical-Vocational Rules supports a finding that Mr. Michel is "not disabled," regardless of transferability of job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Mr. Michel's age, education, work experience, and residual functional capacity allow him to perform jobs that exist in significant

---

the limits set by the regulations." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citations omitted).

numbers in the national economy (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. Mr. Michel has not been under a disability, as defined in the Social Security Act, from April 1, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-21)

On December 10, 2009, Plaintiff again requested review of the ALJ's decision by the Appeals Council (Tr.8). This request was denied on October 27, 2010, with the Appeals Council giving the following reasons for its denial:[10]

In looking at your case, we considered additional evidence listed on the enclosed Order of Appeals Council.[11]  Your attorney argued, in part, that the Administrative Law Judge erred in his evaluation of the opinion of your treating physician, Jane McDonald, M.D., (Exhibit 38F) and the opinion of your physician's assistant, Alan Baumgardner, P.A.C., (Exhibit 37F).  The Administrative Law Judge, in the decision at pages 7 and 8, articulated reasons why the assessment/opinion of Dr. McDonald and Mr. Baumgardner were not accepted.  They were found inconsistent with the other evidence of record.

The Appeals Council notes that while Dr. McDonald and Mr. Baumgardner indicate that you are not capable of working, your earnings record reflects earnings of $3,072.67 in 2008, $10,172.97 in 2009, and

_____

[10] It should be noted that the Appeals Council's decision to deny Plaintiff's request is not subject to judicial review. The court's role is limited to deciding whether the administrative law judge's determination is supported by substantial evidence on the record as a whole, including any new evidence submitted after the determination was made that the Appeals Council considered. *See Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994).

[11] The "additional evidence" consisted of a letter brief from Plaintiff's attorney with attached medical record from Mid-Plains Center dated July 2, 2009 (Tr. 753-60).

$2,787.00 in the first quarter of 2010.[12] These earnings indicate that you have engaged in substantial gainful activity after your alleged onset date of disability, and refute the statements of your treating source and other source that you are incapable of working. We find that the additional evidence and your attorney's contentions do not provide a basis for changing the Administrative Law Judge's decision.

(Tr. 3-4). Upon denial of the request for review, the second ALJ's decision became the final decision of the Commissioner. *See Van Vickle v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2008).

Plaintiff filed this action on December 29, 2010, alleging that the decision is not supported by substantial evidence and is contrary to law (filing 1). In particular, Plaintiff contends the ALJ committed reversible error by (1) giving "little weight" to the opinion of Dr. McDonald, (2) assessing his mental RFC as only limiting him to the performance of simple, repetitive tasks, and (3) not posing a proper hypothetical question to the vocational expert.

## II. Discussion

The applicable standard of review is whether the Commissioner's decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). " Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." *Id.* (internal quotations and citations omitted). Evidence that both supports and detracts from the Commissioner's decision should be considered, but a final administrative decision is not subject to reversal by a reviewing court merely because some evidence in the record may support a different conclusion. *See id.* Questions of law, however, are reviewed de novo. *See Olson v. Apfel*, 170 F.3d 822 (8th Cir. 1999); *Boock v. Shalala*, 48 F.3d 348, 351 n2 (8th Cir. 1995).

---

[12] I do not find this evidence in the administrative record. I only find an earnings report that was run on October 3, 2008 (Tr. 99-107).

### A.  Dr. McDonald's Opinion

On February 6, 2007, Jane McDonald, M.D., completed a medical source statement based on her treatment of Plaintiff between April 2003 and August 2006 (Tr. 671-74).  She opined that during an 8-hour workday Plaintiff could sit for 1 hour at a time and 4 hours total in a recliner, and could stand and walk for 1 hour at a time and 2 hours total (Tr. 671). She said he could occasionally lift 20 pounds and could occasionally stoop, balance, kneel, and reach above his shoulders, but he could never climb, crouch, crawl, or walk on uneven surfaces (Tr. 672). Dr. McDonald further opined that Plaintiff's impairment would result in a frequent need to lie down for 20 or 30 minutes at unpredictable intervals during an 8-hour workday and that his pain would prevent Plaintiff from maintaining concentration and attention "all the time" (Tr. 673-74). She also thought that his impairment or treatment would cause Plaintiff to be absent from work "more than four times a month" on average (Tr. 673). Dr. McDonald indicated she found Plaintiff's complaints of pain to be credible and supported by medical findings, which were not described (Tr. 673).

Even though specifically instructed by the Appeals Council to evaluate this medical opinion, the ALJ on remand simply stated that "in light of Mr. Michel's admitted current work-related history, which contradicts Dr. McDonald's opinion, I have given it little weight."  (Tr. 19) The ALJ provided no further explanation.  His decision does, however, contain the following description of Plaintiff's employment history since Dr. McDonald's opinion was rendered:

> Mr. Michel testified his current job includes working as a "stock person" as well as "sales." (The "sales" part of the job is quite significant, as this admission contradicts suggestions in the record that Mr. Michel cannot get along with others and cannot tolerate contact with the public.)  He said he works 6 hours a day, 4 days a week and earns $8.50 per hour.  He further testified he has tried to work more than 24 hours a week, but cannot do so because of pain and fatigue.  He said he previously worked 24 hours a week as a security guard for 3 months (see also 44F, p. 1).

Within the past year or so, according to vocational rehabilitation records, he had "a part-time job with Action Cab ... [w]orking between 24-32 hours per week" for about two months in 2008.[13] He lost that job when he failed to show up for a night shift when the boss was expecting him (Exhibits 47F, p. 5 and 45F, p. 7), and not because he was physically or mentally unable to do the work. Although at his current job, Mr. Michel has some work accommodations, including a special pair of shoes (Exhibit 47F, pp. 1-2), his employer there is quite happy with him (Exhibit 47F, pp. 7-9). Mr. Michel has expressed interest in working as a forklift driver (Exhibit 47F, p. 5) and actually has applied for a job as a security guard (Exhibit 47F, p. 4) and for another job as a handibus driver (Exhibit 47F, p. 6). In December, 2007, Mr. Michel told his physician's assistant "he was laid off from his job due to financial difficulties at Dr. Jay's [sic]"–not because of an inability to do the work–but "stated that he could collect unemployment" (Exhibit 45F, p. 11).[14] Under the Nebraska Employment Security Law, Mr. Michel must be "able to work and available to work" in order to receive unemployment benefits.

(Tr. 16-17)

There is no dispute that Dr. McDonald qualified as a "treating source" under Social Security regulations.[15] "If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is

---

[13] The record indicates Plaintiff drove the taxicab "3-4 days a week [beginning on] 5-8-08." (Tr. 745) In other words, he apparently worked 8-hour shifts.

[14] Plaintiff testified that for 3 months he worked 24 hours a week at Dr. John's watching security monitors and checking IDs as people entered (Tr. 769, 781-82).

[15] Social Security regulations define a "treating source" to be an "acceptable medical source" who provided the claimant "with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§ 404.1502, 416.902. The term "acceptable medical source" includes licensed physicians, licensed or certified psychologists, and, for limited purposes only, licensed podiatrists and qualified speech-language pathologists. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a).

-11-

well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(d), 416.927(d).[16] Otherwise, the weight the Commissioner will give to a medical opinion[17] depends upon (1) whether the source examined the claimant, and, if so, the frequency of examination; (2) whether the source treated the claimant, and, if so, the length, nature, and extent of the treatment relationship; (3) whether the opinion is supported by relevant evidence; (4) whether the opinion is consistent with the record as a whole; (5) whether the source is a specialist; and (6) any other relevant factors. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin., July 2, 1996). A decision which is not fully favorable "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*

Plaintiff objects that the ALJ "failed to explain how [his] current work-related history contradicts Dr. McDonald's opinion" (filing 14 at 17). He notes Dr. McDonald opined that he could sit, stand, and walk for a combined total of 6 hours in a normal

---

[16] "Controlling weight . . . is the term used in 20 CFR 404.1527(d)(2) and 416.927(d)(2) to describe the weight [the Commissioner] give[s] to a medical opinion from a treating source that must be adopted." SSR 96-2p, 1996 WL 374188, at *2 (Soc. Sec. Admin., July 2, 1996).

[17] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his or her] symptoms, diagnosis and prognosis, what [he or she] can still do despite impairment(s), and [his or her] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) .

workday, and argues this limitation is "entirely consistent" with his recent history of part-time employment (filing 14 at 17).

The Commissioner counters that "Plaintiff testified at his administrative hearing that while at work, he would stand continuously for one and one-half to two hours and then sit periodically for five minutes (Tr. 778). . . . This suggests that Plaintiff spent most of his six-hour shift standing, taking only periodic breaks to sit, which would exceed Dr. McDonald's limitation of only two hours spent standing. Also, Plaintiff's ability to stand for one and a half to two hours at one time exceeds Dr. McDonald's opined limitation that Plaintiff could only stand for one hour at a time (Tr. 671, 778)." (Filing 19 at 13)

Although Plaintiff's testimony is somewhat confusing, it does appear that he was on his feet during most of his 6-hour shift while working as a stock person at the truck stop.  A portion of his testimony is set out below:

> Q (by Plaintiff's attorney) Okay. How long can you be up on your feet at one time?
> A Well, I've been, since I've been working, I've been struggling with my shifts trying to stay on my feet for the duration of my shift, and I want to say, probably an hour-and-a-half, two hours at a time, and I got voc rehab to get me a chair, and some kneeling pads and some pads behind the counter there where I can stand to allow me to sit periodically, and that's helping, but of course that's one of those pride things where I don't want to sit down all -- at the, at workplace so, I'm struggling with that.
> . . .
> Q And why, why did they get -- provide this chair for you?
> A Because of my inability to stand very long. . . . I can't walk around too much during the day because of the walking gets to me.
> . . .
> Q Okay. How long can you sit at one time?
> A Well, I've probably forced myself to sit, an hour, but it's uncomfortable and I'm constantly moving and fidgeting . . .
> . . .

-13-

Q (by the ALJ) Mr. Michel, I want to understand one detail of your testimony. I might have gotten a little turned around there. You said, you thought you could sit for about an hour or so if you had to, and you said you could stand for an hour-and-a-half of two hours, but you had a chair and a pad and things like that.

So, my question is, are you really standing an-hour-and-a-half or two hours, or are you sitting down some time during that hour-and-a half and two hours?

A I'm sitting down periodically for about a five-minute period, but I'm doing some walking . . ..

Q Okay.

A I'm trying to stay mobile  . . ..

Q Okay. So, you are, you are mostly on your feet for an hour-and-a-half or two hours, but not literally on your feet that long. Is that right?

A Right, right.

Q Okay. Okay. Okay. If you couldn't sit down at all, how long do you think you can stay on your feet?

A I really never tried that, I guess to --

Q Yeah.

A -- limit myself or going as far as I could. Forty-five minutes, that's just a guess I can come up with.

Q Okay.

A I know that I get to hurting and so, I'll sit if I have the opportunity.

(Tr. 775-79)

The Commissioner additionally points out that "Dr. McDonald opined that Plaintiff could only work for four hours a day if he was allowed to sit in a recliner (Tr. 671)," but that he had only been provided a chair at work, and, furthermore, "there is no indication that Plaintiff frequently lay down at his job for 20 to 30 minutes at unpredictable intervals, as Dr. McDonald opined would be necessary (Tr. 674)." (Filing 19 at 13)[18] Dr. McDonald also thought that Plaintiff's pain would prevent him

_____

[18] Plaintiff argues the Commissioner should not be allowed to supply a new rationale for the ALJ's decision (filing 22 at 2-3 (citing *Golembiewski v. Barnhart,*

-14-

from maintaining concentration and attention "all the time" (Tr. 673), but Plaintiff admits his recent work "showed he could maintain attention and concentration" (filing 14 at 17). Finally, there is no evidence Plaintiff has had any problems with absenteeism, even though Dr. McDonald predicted he would be absent from work "more than four times a month" (Tr. 673).

"[I]t was proper for the ALJ to consider each of the employment positions [Plaintiff] maintained after his alleged onset of disability, because '[w]orking generally demonstrates an ability to perform a substantial gainful activity.'" *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (quoting *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005)). *See also Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) (part-time work may demonstrate ability to perform substantial gainful employment). It was also appropriate for the ALJ to consider this evidence when weighing Dr. McDonald's opinion. *See Medhaug*, 578 F.3d at 815 (treating physician's statements that claimant "cannot sit for a long period of time without getting up to move around," and that "it [would be] almost impossible for him to hold a full time job," were contradicted by claimant's testimony at administrative hearing that he was currently employed as a school bus driver, working approximately six hours a day, five days a week); *Goff*, 421 F.3d at 790-91 (claimant's testimony that she worked 5-hour shifts for 15 to 23 hours a week as a kitchen helper, where she was on her feet for about 2 hours at a time, was "substantial, indeed compelling, evidence inconsistent with

_____

322 F.3d 912, 916 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."); *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision."); *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.")). The Commissioner, however, is merely elaborating upon the ALJ's determination that Plaintiff's "admitted current work-related history . . . contradicts Dr. McDonald's opinion . . . ." (Tr. 19)

[treating physician's] assessment" that claimant could only stand or walk for 2 to 3 minutes at one time, could seldom reach with her upper extremities, and could handle objects for less than 2 hours of an 8-hour workday). "'[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount' a treating physician's RFC." *Davidson v. Astrue*, 501 F.3d 987, 991 (8th Cir. 2007) (claimant's testimony regarding her attendance at daughter's basketball games undermined doctors' opinions that she could only sit, stand, and walk for 3 or 4 hours per day) (quoting *Goff*, 421 F.3d at 790-91).

Unfortunately, the ALJ failed to explain why Plaintiff's part-time employment is inconsistent with a 6-hour workday limitation that is suggested by Dr. McDonald's opinion.[19]  As was even noted in the ALJ's decision, Plaintiff testified he is physically unable to work more hours than this.  His testimony was as follows:

> Q (by Plaintiff's attorney) You are currently working 24 hours a week at this job [at Bosselman's Truck Plaza]. Do you think you can handle any more hours that [sic] that?
> A I've already tried to see if I can do that, and I can't do that anymore. There's even times when I think I'm overdoing it now.

---

[19] The vocational expert testified in response to a question from Plaintiffs' attorney that a hypothetical individual who could only stand and walk for 2 hours and sit for 4 hours would be precluded from working because "we're below an eight-hour workday" (Tr. 784). This testimony is consistent with the Commissioner's official policy interpretation that "at step five of the disability determination, 'only an ability [on the part of the claimant] to do full-time work will permit the ALJ to render a decision of not disabled.'" *Bladow v. Apfel*, 205 F.3d 356, 359 (8th Cir. 2000) (quoting *Kelley v. Apfel*, 185 F.3d 1211, 1214 (11th Cir. 1999) (per curiam)). *See* SSR 96-8p, 1996 WL 374184, at *1 (Soc. Sec. Admin. July 2, 1996) ("Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.").

-16-

(Tr. 777) He further testified that his routine after getting off work is to "get into the shower and try to relax."  (Tr. 777) Plaintiff indicated that his "best relief [for pain] is to lie down or to recline in a recliner or hot showers."  (Tr. 772) He added that "if I didn't have these pain pills,[20] ... I wouldn't probably be there at this job right now because the pain pills are what cut, cut it so that I can stay in six hours." (Tr. 777)

Despite the ALJ's lack of explanation, I conclude he did not commit reversible error in giving little weight to Dr. McDonald's opinion.  Significant portions of her opinion were contradicted by Plaintiff's testimony concerning his work activities during 2008 and 2009.  Her opinion, which was rendered in February 2007, was also inconsistent with Plaintiff's contemporaneous estimates about the amount of time he could sit, stand, and walk.  As the ALJ noted in his decision, "[i]n March, 2007, . . . Mr. Michel said he could walk for 20 minutes, stand for 15 minutes, and sit for 45 minutes at a time, and in an 8-hour workday could stand for a total of 2 to 3 hours, walk for 1 hour, and sit for 4 to 5 hours (Exhibit 25E)."  (Tr. 17).

When asked to provide the basis for her opinion, Dr. McDonald only stated that Plaintiff had not worked for 3 years and that she had discussed with him "what he does at home on a daily basis" (Tr. 672).  Where a treating physician's opinion is based largely on the patient's subjective complaints with little objective medical support, and is inconsistent with the record as a whole, it is entitled to little weight.  *See* *Vandenboom v. Barnhart, 421 F.3d 745, 749 (8th Cir. 2005)*.  *See also* *Reed v. Barnhart, 399 F.3d 917, 921 (8th Cir. 2005)* (medical source statement may be entitled to little or no weight where listed limitations "stand alone" and are not mentioned in treatment records nor supported by any objective testing or reasoning).

Dr. McDonald first saw Plaintiff in April 2003 for removal of skin tags on his face and neck (Tr. 595).  Plaintiff reported having "chronic ongoing low back pain and discomfort" and indicated he was "working on Worker's comp." (Tr. 595). Plaintiff

---

[20] Plaintiff testified he takes Lortab, which cuts the pain "just enough" (Tr. 773).

-17-

was next seen in July 2004, complaining of abdominal pain; the diagnosis was a diastasis hernia (Tr. 594). Nine months later, in April 2005, he sought "some assistance with his back pain" and asked Dr. McDonald to refer him to a specialist (Tr. 683). She referred him to Michael Longley, M.D., who conducted an examination in May 2005 (Tr. 660-64).[21]  Dr. Longley informed Dr. McDonald that Plaintiff "undoubtedly has significant L4-5 and L5-S1 disc degeneration and associated lumbar spinal stenosis" (Tr. 659).[22] In April 2006, Plaintiff had lower abdominal pain and discomfort, which Dr. McDonald was concerned might be secondary to diverticulitis (Tr. 593). She also noted he "has disability secondary to chronic back pain and discomfort" and "some depressive type symptoms" but did not prescribe any treatment (Tr. 593). In August 2006, Plaintiff complained of respiratory difficulties associated with his persistent tobacco use (Tr. 592).  These are Dr. McDonald's only treatment records before she prepared the medical source statement in February 2007 at the request of Plaintiff's attorney.[23]

---

[21] Dr. Longley observed that Plaintiff appeared uncomfortable and changed positions frequently (Tr. 662). Physical examination revealed an asymmetric spine, moderate decreased lumbar lordosis, mild pain with palpation of the spine, a positive straight leg raise, and diminished sensation to pinprick in his left thigh (Tr. 662-63). X-rays showed degenerative lumbar disc disease at L4-S1 with foraminal stenosis at the L4-L5 level (Tr. 663).

[22] Following a June 2005 MRI scan of Plaintiff's lumbar spine, Dr. Longley advised that "[h]e might achieve some temporary benefit with the use of nonsteroidal anti-inflammatories, epidural injections at the L4-L5 level, and physical therapy in the form of abdominal strengthening exercises and core strengthening exercises" (Tr. 657, 658).  It was noted that Plaintiff's "symptoms are alleviated also by sitting" (Tr. 657). Dr. Longley also discussed with Plaintiff that "his surgical treatment would involve an L5 to S1 fusion" (Tr. 657).

[23] Plaintiff had four subsequent office visits with Dr. McDonald. In March 2007, Plaintiff said he was constipated and had "severe back pain, discomfort, and pain which comes across his low back which will shoot into his abdomen" (Tr. 693). The next month Plaintiff had hematest positive stools (Tr. 702A), but a film study showed no abnormalities (Tr. 694). In March 2008, Plaintiff was "having some throat pain, ear pain" (Tr. 739). Dr. McDonald also noted that Plaintiff "has had back pain,

Dr. McDonald's medical source statement is inconsistent with other evidence, and her treatment notes do not bolster her opinion regarding Plaintiff's ability to sit, stand, and walk.  Under these circumstances, the ALJ was justified in giving little weight to her opinion.  *See Hurd v. Astrue*, 621 F.3d 734, 739 (8th Cir. 2010) (ALJ justified in giving little weight to opinion of treating physician who saw claimant only 4 times and prepared statement at request of claimant's attorney rather than in course of treatment); *Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004) (treating physician's opinion properly discredited where she saw claimant only 3 times and treatment notes did not indicate she had sufficient knowledge to formulate opinion about claimant's ability to function in workplace).

In summary, the ALJ's physical RFC assessment, which limited Plaintiff to performing sedentary work while being able to sit or stand at will throughout the day, is supported by substantial evidence on the record as a whole.   Dr. McDonald's contrary opinion that Plaintiff would be limited to sitting for 4 hours and to standing or walking for 2 hours during a workday is not controlling.

### B. Plaintiff's Mental Residual Functional Capacity

Plaintiff next argues the ALJ's mental RFC assessment that he can perform simple, repetitive tasks is inconsistent with a finding at step three of the sequential evaluation process that he has "moderate" difficulties in maintaining concentration, persistence and pace (filing 14 at 19-20).  The ALJ explained that he made this finding because Plaintiff "testified he has problems remembering things and gets frustrated

---

back discomfort" and "is working on disability" (Tr. 739). Finally, in August 2008, Plaintiff reported that he "can not walk greater than a block without significant pain and discomfort, decreased range of motion" and "has inability to sleep at night secondary to pain and other issues but persistent unrelenting back pain, discomfort" (Tr. 738).  Dr. McDonald noted that Plaintiff "is still in the thralls of obtaining disability for this" (Tr. 738).  She concluded, "I think that he is considerably disabled by this as well as his depression" (Tr. 738).

when that happens" (Tr. 15). I discern no inconsistency.  *See Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001)* (hypothetical question to vocation expert which assumed ability to do simple, routine, repetitive work adequately captured claimant's "often" deficiencies in concentration, persistence or pace).  Plaintiff has also admitted that his work activity demonstrates an ability to maintain attention and concentration.

### C. Hypothetical Question

Finally, Plaintiff contends the ALJ erred at step five by posing a hypothetical question which "failed to include the limitations of Dr. McDonald regarding Mr. Michel's ability to sit and stand/walk" and indicated "his only mental limitation was to perform simple repetitive tasks" (filing 14 at 23). This assignment of error is merely a restatement of Plaintiff's first two contentions, and it fails for the same reasons.

 "The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011)* (quoting *Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)*). "The ALJ's hypothetical question included all of [Michel's] limitations found to exist by the ALJ and set forth in the ALJ's description of [Michel's] RFC." *Id.* Because "the ALJ's findings of [Michel's] RFC are supported by substantial evidence, . . . [t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits." *Id.* (quoting *Lacroix, 465 F.3d at 889*).

### III. Conclusion

For the reasons explained above, I find the ALJ's decision is supported by substantial evidence on the record as a whole and is not contrary to law.

Accordingly,

IT IS ORDERED that the decision of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).  Final judgment will be entered by separate document.

December 7, 2011.                              BY THE COURT:

                                               *Richard G. Kopf*
                                               Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.